**Donald Allen JULIAN, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14–15–00306–CR, NO. 14–15–00307–CR, NO. 14–15–00308–CR**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed May 3, 2016

---

William L. Pattillo III, Conroe, TX, for Appellant.

Brent Chapell, Conroe, TX, for State.

Panel consists of Justices Jamison, Donovan, and Brown.

## OPINION

Marc W. Brown, Justice

Appellant Donald Julian appeals from his conviction of one count of failure to report change of address[1] as a registered sex offender and two counts of failing to register as a sex offender regularly visiting a location.[2] Appellant presents one issue: that the evidence adduced at trial was insufficient for a rational jury to find beyond a reasonable doubt that he committed the offenses with which he was charged.[3] We affirm.

### Factual and Procedural Background

In 1998, appellant Donald Julian was charged with aggravated sexual assault of a child in Liberty County, Texas. Deferred adjudication was ordered and appellant was placed on community supervision for seven years. As a result, appellant was required to register as a sex offender for the rest of his life. In 2012, appellant moved to Temple, in Bell County, where he registered as a sex offender. On February 26, 2013, Sergeant M. Tronecker of the Temple Police Department performed a compliance check at the address that appellant had provided the Bell County Sheriff's Office. When Tronecker knocked on the door, appellant's son answered. It did not appear that appellant was present at the time. When Tronecker left, he contacted Amy Ponce, who worked maintaining the sex offender registry in Bell County. Ponce testified that appellant made contact with her some time between February 27 and March 4 to tell her that he was out of the county in The Woodlands

for a doctor's appointment. Ponce told appellant that he needed to let the Montgomery County Sheriff's Office know if he was planning to be in the county for more than seven days.

On March 4, 2013, Detective J. Glisson of the Montgomery County Sheriff's Office Sex Offender Compliance Unit received a tip indicating that appellant was living in an RV park in Montgomery County, despite being registered in Bell County. Glisson alerted Deputy E. Rupert, the then-registrar for sex offenders in Montgomery County, to the tip. Rupert checked his phone log to see if anyone named Donald Julian had made contact with the Sheriff's Office. Rupert did not have any entries in his log or in the registry related to Donald Julian. Glisson went to the RV park to investigate and took a statement from the park's manager, Alan Patton. Patton confirmed that appellant had signed a month-to-month "service agreement" with the park to occupy a space there. A copy of this service agreement was admitted into evidence at trial. Patton explained that this service agreement was distinguishable from a lease agreement in that it was month-to-month and could be terminated by either party at any time. After speaking with Patton, Glisson called Ponce to tell her that appellant was in Montgomery County. On March 6, 2013, Glisson secured an arrest warrant for appellant and went to the RV park to execute the warrant. Appellant told Glisson that he knew he was required to register as a sex offender and that his

1. Tex. Code of Crim. Proc. art. 62.055(a) (West 2015).

2. Tex. Code of Crim. Proc. art. 62.059 (West 2015).

3. This appeal was transferred to this court from the Ninth Court of Appeals. In cases

transferred from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the transferor court if the transferee court's decision would have been inconsistent with the precedent of the transferor court. *See* Tex. R. App. P. 41.3.

trailer had been in the RV park in Montgomery County for two months. Glisson asked appellant if he had been in Montgomery County for more than 48 hours on three occasions that month and appellant confirmed that he had. Appellant confirmed also that a compliance officer had been to his registered address in Temple to check on him. Glisson asked what his son had told the officer, and appellant stated that his son had told the officer that appellant no longer lived at that address in Temple.

At trial, the State called several witnesses to establish that appellant had been outside of Bell County for an extended period of time during the first three months of 2013. Patton testified that he saw appellant sitting outside "from time to time" and that appellant would come in to the park's office to do his laundry "regularly," perhaps once a week. In the middle of the week, Patton testified, appellant would usually come into the office to chat. Patton testified that appellant was at the RV park "most of the time" and that he saw appellant talking to neighbors three to four times a week. Patton also testified that he saw appellant's vehicle every day and on the weekends, but that appellant would be gone "for hours during the day." Patton's records indicated that appellant paid rent for his space in the RV park on January 4, February 2, and March 6 before he was arrested and taken into custody. Robin Miller, a fellow resident of the RV park, testified that she saw appellant "regularly, daily" for "about two months." Miller also testified that appellant's vehicle was at the park "often[;] it didn't move very much." Miller stated that there were probably four days in which she did not see appellant throughout the two months that his trailer was at the park. Miller also testified that appellant had installed a satellite dish into the ground outside of his trailer.

Appellant called three witnesses in his defense. Appellant's first witness was Terri Allen, his ex-wife, who testified that appellant was receiving treatment and "therapy" in The Woodlands and so had his trailer in the RV park for "convenience." Allen testified that between January and March 2013, appellant visited her in Crockett, in Houston County, and that she also visited him at his trailer in Montgomery County. Allen confirmed that appellant had "sometimes" spent 48 hours with her either in Houston County or Montgomery County, but was unable to give an exact number of times in which this occurred. Allen said that it was "possible" that appellant could have visited her for 48 hours on three separate occasions in one month. Robert Clark, appellant's neighbor at the RV park, testified that appellant was "gone a lot" and that appellant "went to Temple and Houston for doctor[']s appointments and things like that." Clark testified also that he "never" saw appellant at the park for 48 hours, three times a month. Appellant's medical case manager, Christine Leopold, testified that the mailing address appellant provided her was in Temple, Bell County. Appellant also introduced a statement from his bank, which indicated that he had made three transactions in Temple in the month of January. The bank statement also indicated transactions completed in Lufkin, Conroe, Willis, Tyler, and Livingston—none of which are located in Bell County—in January and February.

The jury convicted appellant on all three counts. The court sentenced appellant to 25 years in the Texas Department of Criminal Justice Institutional Division. Appellant timely filed this appeal.

## Analysis

■ In his only issue on appeal, appellant contends that the evidence present-

ed at trial was insufficient to support the jury's verdict of guilt. It is undisputed in this case that appellant was a person required to register as a sex offender under Texas Code of Criminal Procedure chapter 62. We need only determine whether the evidence was sufficient to support a finding that appellant failed to comply with the requirements of chapter 62—reporting a change of address and registering as a sex offender frequently visiting a location. When reviewing the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Price v. State*, 456 S.W.3d 342, 347 (Tex.App.—Houston [14th Dist.] 2015, pet. ref'd). "It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex.Crim.App. 2013). We take each count in turn.

### Count I: Failure to report change of address

Count I charged appellant under Texas Code of Criminal Procedure article 62.005(a), which provides: "If a person required to register changes address, the person shall, not later than the seventh day after changing the address ... report in person to the local law enforcement authority in the municipality or county in which the person's new residence is located and provide the authority with proof of identity and proof of residence." Tex. Code Crim. Proc. art. 62.055(a) (West 2015). Appellant argues that the State did not present any credible evidence at trial to sufficiently demonstrate that he intend-

ed to change his address from Bell County to Montgomery County and to establish a new residence there.

Code of Criminal Procedure chapter 62 does not provide a definition of "residence." Likewise, the Court of Criminal Appeals has not yet spoken regarding what constitutes a "residence" in the context of chapter 62 offenses. However, in the context of a similar offense—failure to inform one's probation officer of a change in residence—the Court of Criminal Appeals has held that:

> [R]esidence is an elastic term. The meaning that must be given to it depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide, at that moment the residence is fixed and determined.

*Whitney v. State*, 472 S.W.2d 524, 525 (Tex.Crim.App.1971) (internal citations omitted); *Silber v. State*, 371 S.W.3d 605, 612 (Tex.App.—Houston [1st Dist.] 2012, no pet.). We consider this description of a "residence" to be instructive and therefore determine whether the evidence in this case was sufficient to demonstrate a coincidence of both bodily presence and intent to make a residence. There is no dispute that appellant was present in Montgomery County for some amount of time. The only question then is whether, by his presence there, appellant intended to make Montgomery County his new residence.

■ We conclude that the evidence adduced at trial was sufficient to support a finding that appellant intended to adopt Montgomery County as his new residence. For three months, appellant consistently paid for a space in which to park his trailer. Residents of the RV park, includ-

ing its manager, testified to seeing appellant on a sometimes-daily basis engaging in activity consistent with an intent to stay past a brief visit or vacation. Appellant was doing his laundry "regularly," installed a satellite dish of his own, made friends with the neighbors, and was present daily for "about two months." The jury could have reasonably inferred from these actions that he intended to set up a home at the RV park. Finally, when a compliance officer visited appellant's registered address in Bell County, appellant's son told the officer that appellant no longer lived there.

█ Appellant argues that, because there was no direct statement—either by appellant or another witness—explicitly indicating his intent to establish a residence in Montgomery County, no rational jury could have found that he did so. However, the witnesses' testimony is circumstantial evidence that is "as probative as direct evidence" in establishing appellant's intent to change his address and establish a residence in Montgomery County. *Carrizales*, 414 S.W.3d at 742. Appellant also contends that the testimony that he was receiving medical treatment in Montgomery County demonstrates that he only intended to be present in the county on a temporary basis. It is not clear that receiving medical treatment in a location and having established a residence at that location are mutually exclusive. In the event that there are conflicting inferences arising from the witnesses' testimony, "we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex.Crim.App.2012) (citing *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781). We therefore conclude that the evidence was sufficient to demonstrate that appellant established a new residence and subsequently failed to report the address of his new residence to the Montgomery County Sheriff's Office.

## Counts II and III: Failure to register as a sex offender regularly visiting a location during the months of January and February 2013

Counts II and III charged appellant under article 62.059 of the Code of Criminal Procedure, which provides that a person required to register as a sex offender under chapter 62 who "on at least three occasions during any month spends more than 48 consecutive hours in a municipality or county in this state, other than the municipality or county in which the person is registered ... before the last day of that month shall report to [ ] the local law enforcement authority of the municipality in which the person is a visitor." Tex. Code Crim. Proc. art. 62.059(a)(1) (West 2015). Count II alleged that appellant violated the registration requirement in February 2013, and Count III alleged that appellant violated the requirement in January 2013.

█ ▪During Detective Glisson's testimony, the State showed the in-car video documenting Glisson's visit to appellant's trailer. The video indicated that Glisson asked appellant whether he had been in Montgomery County for more than 48 hours on three occasions, and appellant responded that he had. Appellant argues that this extrajudicial confession is not sufficient to support the guilty verdict under the common law *corpus delicti* rule because it is not corroborated by sufficient "independent evidence." "The *corpus delicti* doctrine requires that evidence independent of a defendant's extrajudicial confession show that the 'essential nature' of the charged crime was committed by someone." *Carrizales*, 414 S.W.3d at 743 (quoting *Hacker v. State*, 389 S.W.3d 860, 865–66 (Tex.Crim.App.2013)).

The quantum of independent evidence necessary to corroborate the *corpus delicti* in a criminal prosecution relying upon the extrajudicial confession of an accused need not be great. So long as there is some evidence which renders the *corpus delicti* more probable than it would be without the evidence, ... the essential purposes of the rule have been served.

*Gribble v. State*, 808 S.W.2d 65, 71–72 (Tex.Crim.App.1990) (internal citations omitted).

The evidence presented at trial—independent of appellant's own confession—is sufficient to demonstrate that appellant was in violation of the registration requirement for frequent visitors. As in the case of appellant's failure to report a change of address, testimony from multiple witnesses indicated that appellant was spending a substantial amount of time in Montgomery County in January and February 2013. Appellant began renting a space at the RV park on January 7 and continued to do so until his arrest on March 6. Patton testified that appellant was at the park "most of the time" and that he saw appellant three or four times each week. Miller, another RV park resident, testified to seeing appellant regularly, if not daily, "for about two months." Miller also estimated that there were only four days in which she did not see appellant throughout those two months. Allen, appellant's ex-wife, testified that, although she was not sure of the exact number of times that she had spent time with appellant in Montgomery County for more than 48 hours, it was "possible" that it could have been three or more times within a month. Appellant's bank statements for January and February also show several strings of transactions in Conroe and Willis—both in Montgomery County—that span as many as four days.

Appellant counters that no witness could identify with any specificity the occasions on which she had seen appellant in Montgomery County for more than 48 hours at a time. While it is true that no witness provided any specific dates or times for these 48-hour stretches, our deference to the jury's verdict and the minimal quantum of independent evidence necessary to corroborate appellant's confession weigh in favor of affirming the verdict. In short, there is evidence sufficient to "render[ ] the *corpus delicti* more probable than it would be without the evidence." *Gribble*, 808 S.W.2d at 71–72.

### Conclusion

We conclude that the evidence is sufficient to support a conviction on all three counts of failure to comply with chapter 62 of the Code of Criminal Procedure. Therefore, we affirm.