Elena Antoinette **BRADFORD**,
Appellant

v.

The **STATE of Texas**, Appellee
NO. 14–15–00707–CR

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed January 26, 2017

Discretionary Review Refused
June 7, 2017

---

Allison Lindblade, Galveston, TX, for State.

Greg Russell, Galveston, TX, for Appellant.

Panel consists of Justices Jamison, Wise, and Jewell.

## OPINION

Ken Wise, Justice

A jury found appellant Elena Antoinette Bradford guilty of failing to report child abuse.[1] In a single issue, appellant contends that the evidence is legally insufficient under the corpus delicti rule because there is no evidence corroborating her extrajudicial confession. The State contends that the corpus delicti rule does not apply because appellant did not "confess" to the crime. The State does not argue that there is any corroborating evidence of appellant's guilt.

We hold that the corpus delicti rule applies, and no evidence corroborates the corpus delicti. Accordingly, we reverse the trial court's judgment and render a judgment of acquittal.

## I. BACKGROUND

Appellant testified that in 2012 appellant's young daughter alleged the child's father had touched the child inappropriately. Appellant reported the possible abuse to the Texas City Police Department.[2] Appellant testified that because of the 2012 allegation, and because the father was a "registered sex offender,"[3] appellant did not allow the child to be with the child's

father absent adult supervision.[4] The State presented evidence that appellant allowed the child to spend the night at the father's girlfriend's house and that the father had picked up the child from school on several occasions.

Appellant testified that the child had bipolar disorder, oppositional disorder, and ADHD. In March 2014, the father picked up the five-year-old child from school after the child was being disruptive and had been sent to the principal's office. The principal testified that the father was allowed to take the child because there was no documentation at the school prohibiting the father from having access to the child.

Appellant was upset that the school allowed the father to take the child, and she immediately complained to the La Marque Police Department. Detective Danielle Herman spoke with appellant and described her as upset and very distraught: "she seemed like a distraught mother whose child was not where they were supposed to be." Herman testified that during a conversation with appellant, appellant claimed to have reported "possible sexual assault" to Child Protective Services (CPS) about three weeks prior:

Q. What did the defendant tell you?
A. She was upset. Her young child had been released from school with a person that was, I guess, not on an authorized list to have picked the child up. And she

---

1. *See* Tex. Fam. Code § 261.101(a) ("A person having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter."); Tex. Fam. Code § 261.109(a) ("A person commits an offense if the person is required to make a report under Section 261.101(a) and knowingly fails to make a report as provided in this chapter.").

2. The record does not contain evidence about the result of that report. The State objected to its relevance.

3. A police officer testifying for the State explained that the father "was on the registration, but his duty to register had expired a couple of years previous."

4. There is no evidence of any judicial order or decree prohibiting the father from contact with his daughter. Appellant testified that at the time of trial, she was "trying to fight for custody."

told us that the—that the person was also a—or supposed to be a registered sex offender but was not currently registering and that the child had recently made disclosures to her that—of possible sexual assault by this person.

Q. Okay. You said that allegations of possible sexual assault. When did she say these allegations happened or occurred?

A. Approximately three weeks prior to this incident.

. . . .

Q. You said that she told you about these allegations. Did she ever tell you she disclosed them to anyone?

A. Whenever she initially said that the child had made these disclosures to her, I asked her who was currently investigating those allegations. And she told me that she had reported them to CPS about three weeks prior, also.

While another officer immediately began working to locate the child,[5] Herman began "the other side of the investigation." She contacted CPS and was unable to locate an active investigation for any new allegations of sexual assault. So Herman made a referral to CPS "for neglectful supervision on [appellant] for not having actually reported the allegations prior."

A CPS supervisor, Martha Allen[6] testified that she investigated the new allegation of sexual assault and neglectful supervision. She met with the child three times. She interviewed other people, as well: appellant, appellant's mother, the father, the father's girlfriend, the father's girlfriend's children (at least one of whom attended the same school as the child), law enforcement personnel, school personnel, and an-

other relative with whom the child was placed outside the home. Allen spoke with appellant more than three times "[u]ntil [appellant] stopped wanting to communicate with [Allen]." Allen gave her impressions about the investigation:

It was a very—it was a mess. It was a very messy case. I mean, the child has seen and witnessed way more than a child her age should see. I feel like she had been coached on what to say to CPS. I felt like I didn't get good, accurate information. I felt like the family was not forthcoming. Difficult, screaming, yelling, racial slurs to me, name calling, kicking me out of their home. Yeah. It was—I mean, it was not a good case.

Appellant testified that she told one of the detectives about the alleged assault from 2012, but she denied saying anything to Detective Herman about an incident occurring three weeks prior. She testified that the child had not made an allegation about the father's inappropriate touching since 2012. She testified that she was upset with Allen for asking the child "[i]f your mama smoke weed." Appellant told the child to "stay in a child's place" and "don't go tell on my household" unless "it's something harming her, somebody abusing her."

The jury found appellant guilty, and the trial court placed her on community supervision.

## II. LEGALLY INSUFFICIENT EVIDENCE

Appellant contends that the evidence is legally insufficient under the corpus delicti rule. The State contends that the rule does not apply because appellant did not confess to any wrongdoing.

---

5. The school principal testified that she sent a secretary to retrieve the child from the father's girlfriend's house, and the child was out of school for "maybe like 15 minutes."

6. Her name also appears in the record as Marla Allen.

First we review general principles for the corpus delicti rule. Then we reject the State's threshold argument about whether the rule applies to appellant's statement to Detective Herman. Finally, we hold that the evidence is legally insufficient under the corpus delicti rule.

### A. General Principles for Corpus Delicti Rule

■■■ "The corpus delicti rule is one of evidentiary sufficiency affecting cases in which there is an extrajudicial confession." *Miller v. State*, 457 S.W.3d 919, 924 (Tex. Crim. App. 2015). "The rule states that, when the burden of proof is beyond a reasonable doubt, a defendant's extrajudicial confession does not constitute legally sufficient evidence of guilt absent independent evidence of the corpus delicti." *Id.* (alteration and quotation omitted). "To satisfy the corpus delicti rule, there must be evidence independent of a defendant's extrajudicial confession showing that the essential nature of the charged crime was committed by someone." *Id.* (alteration and quotation omitted). The corpus delicti rule requires corroboration of two elements of a crime—"an injury or loss and a criminal agent"—but there need not be any independent evidence that the defendant was the criminal culprit. *Salazar v. State*, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002).

■■■ The purpose of the corpus delicti rule is to provide "essential protection for those defendants who would confess to an imaginary crime because of mental infirmity or for other reasons." *Miller*, 457 S.W.3d at 926. So long as there is independent evidence to render the corpus delicti of a crime "more probable than it would be without the evidence," the essential purposes of the rule have been satisfied. *Julian v. State*, 492 S.W.3d 462, 468 (Tex. App.—Houston [14th Dist.] 2016, no pet.)

(quoting *Gribble v. State*, 808 S.W.2d 65, 71–72 (Tex. Crim. App. 1990 (plurality op.)); *see also Rocha v. State*, 16 S.W.3d 1, 4 (Tex. Crim. App. 2000).

### B. Corpus Delicti Rule Applies to Admissions of Incriminating Facts

Citing Black's Law Dictionary for the definition of "confession," the State contends that appellant did not confess because she did not admit to any wrongdoing. The State contends that for the corpus delicti rule to apply, appellant "would've had to confess that she believed the child was being abused *and* that she failed to report abuse." (emphasis added). We disagree.

■ The State cites no authority to suggest that the corpus delicti rule applies only when a person admits to every fact necessary to prove guilt. The State notes that recent cases from the Court of Criminal Appeals addressing the corpus delicti rule generally refer to "confessions" without mention of mere "admissions." But the prevailing law is that the corpus delicti rule applies to admissions of incriminating facts that do not amount to a full confession of guilt.

The Court of Criminal Appeals made no distinction between confessions and admissions when applying the corpus delicti rule to a conviction for incest in *Marsh v. State*, 170 Tex.Crim. 512, 513, 342 S.W.2d 435 (1961). The only evidence of intercourse was the defendant's confession and admissions. *Id.* The court reversed the conviction for insufficient evidence: "Such extrajudicial confession *and admissions*, standing alone, are not sufficient proof of the corpus delicti." *Id.* (emphasis added). In *East v. State*, the court described the corpus delicti rule as applicable to admissions: "It has long been the established rule of law in this state that the 'corpus delicti' cannot be proved, alone, by the ex-

trajudicial confessions *or admissions* of the accused; there must be corroborating circumstances." 146 Tex.Crim. 396, 400, 175 S.W.2d 603 (1942) (emphasis added). Quoting Francis Wharton's treatise, the Texas Court of Appeals noted the need for corroboration of " 'confessions of specific charges *or of inculpatory facts*.' " *Willard v. State*, 27 Tex.App. 386, 11 S.W. 453, 453 (1889) (quoting Whart. Crim. Ev. (8th Ed.) § 632) (emphasis added).

Professors Dix and Schmolesky note that "Texas case law contains very little consideration of what constitutes the 'extrajudicial confessions' " for purposes of the corpus delicti rule. 43A George Dix & John Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 51:113 (3d ed. 2011). But they also contend that the Court of Criminal Appeals has applied the corpus delicti rule to admissions of incriminating facts not amounting to full confessions of guilt:

> Specifically, the Court of Criminal Appeals has uncritically applied the requirement of independent proof of the corpus delicti to situations in which the State relied upon accuseds' out-of-court admissions of incriminating facts that fail to acknowledge all facts necessary to show guilt. Thus, the rule requiring corroboration seems to apply whenever the State relies upon evidence that the accused made out-of-court admissions tending to establish his guilt of the crime charged.

*Id.* (citing *Pena v. State*, 153 Tex.Crim. 637, 638, 224 S.W.2d 258 (1949); *Mills v. State*, 123 Tex.Crim. 395, 398–99, 59 S.W.2d 147 (1932)).

Several Texas Courts of Appeals have applied the rule to admissions not amounting to full confessions of guilt. For example, courts have applied the rule when a defendant charged with driving while intoxicated admitted to one element of the crime—driving—but not to being intoxicated. *See Zavala v. State*, 89 S.W.3d 134, 137 (Tex. App.—Corpus Christi 2002, no pet.) (applying the corpus delicti rule to the defendant's "extrajudicial statements" that he was driving the car); *Folk v. State*, 797 S.W.2d 141, 143–44 (Tex. App.—Austin 1990, pet. ref'd) (applying the corpus delicti rule to the defendant's "extrajudicial admissions" and "extrajudicial statements" that he was driving the car). The corpus delicti rule required corroborating evidence that a vehicle was actually driven by someone. *See Zavala*, 89 S.W.3d at 137; *Folk*, 797 S.W.2d at 144.

To this day, *Wharton* and other secondary sources confirm the applicability of the corpus delicti rule to admissions not amounting to full confessions of guilt. *See* Charles Torcia, *Wharton's Criminal Law* § 28 (15th ed. 1993) ("The corpus delicti must be established by evidence independent of any extrajudicial confession *or admission* of the defendant . . . ." (emphasis added)); 29A Am. Jur. 2d Evidence § 777, Westlaw (database updated Nov. 2016) ("Generally, like confessions, postoffense admissions require independent corroboration. Admissions require corroboration, at least where the admission is made after the fact to an official charged with investigating the possibility of wrongdoing, and where the statement embraces an element vital to the Government's case." (footnotes omitted)); E.H. Schopler, Comment Note, *Corroboration of Extrajudicial Confession or Admission*, 45 A.L.R.2d 1316, § 5[a] & n.16 (1956) ("As a general proposition, an accused's admission of incriminating facts not amounting to a confession, if uncorroborated by any other evidence, is not sufficient to sustain a conviction. . . . What the rule that an uncorroborated admission does not support a conviction really means is that the admission without corroboration

is not sufficient evidence of the facts admitted." (footnote omitted)).

In a pair of cases from 1954, the United States Supreme Court required corroboration of the corpus delicti when defendants made admissions not amounting to full confessions of guilt and, like in appellant's case, statements that were partially exculpatory. In *Opper v. United States*, the Court reasoned:

We think that an accused's admissions of essential facts or elements of the crime, subsequent to the crime, are of the same character as confessions and that corroboration should be required.

The need for corroboration extends beyond complete and conscious admission of guilt—a strict confession. Facts admitted that are immaterial as to guilt or innocence need no discussion. But statements of the accused out of court that show essential elements of the crime, here payment of money, necessary to supplement an otherwise inadequate basis for a verdict of conviction, stand differently. Such admissions have the same possibilities for error as confessions. They, too, must be corroborated.

... We conclude that exculpatory statements, however, may not differ from other admissions of incriminating facts. Given when the accused is under suspicion, they become questionable just as testimony by witnesses to other extrajudicial statements of the accused. They call for corroboration to the same extent as other statements.

*Opper v. United States*, 348 U.S. 84, 90–92, 75 S.Ct. 158, 99 L.Ed. 101 (1954) (citations omitted). Reviewing a conviction for tax evasion, the Supreme Court held that corroboration is required for an admission of fact vital to the State's case, regardless of whether the admission is for a formal element of the crime or for a "fact subsidiary to the proof" of the crime:

There is some uncertainty in the lower court opinions as to whether the corroboration requirement applies to mere admissions. We hold the rule applicable to such statements, at least where, as in this case, the admission is made after the fact to an official charged with investigating the possibility of wrongdoing, and the statement embraces an element vital to the Government's case.

. . . .

The negative implications of petitioner's opening net worth admission formed the cornerstone of the Government's theory of guilt. Without proof that assets on hand at the beginning of the prosecution period did not account for the alleged net worth increases, the Government could not succeed. An admission which assumes this importance in the presentation of the prosecution's case should not go uncorroborated, and this is true whether we consider the statement an admission of one of the formal 'elements' of the crime or of a fact subsidiary to the proof of these 'elements.' It is the practical relation of the statement to the Government's case which is crucial, not its theoretical relation to the definition of the offense.

*Smith v. United States*, 348 U.S. 147, 154–55, 75 S.Ct. 194, 99 L.Ed. 192 (1954) (citations omitted).[7]

Relying on *Smith*, the Fifth Circuit reversed a bank robber's convictions for carrying a firearm during the commission of a crime of violence because the only evi-

---

7. The Court of Criminal Appeals recently declined to adopt the Supreme Court's retreat from the traditional corpus delicti rule in favor of a "trustworthiness" standard, but the Court of Criminal Appeals did not criticize the application of any corpus delicti rule to admissions. *See Miller*, 457 S.W.3d at 925–27.

dence that he carried a firearm came from his extrajudicial statements to police. *See United States v. Reynolds*, 367 F.3d 294, 296–97 (5th Cir. 2004). The court reasoned that the defendant's admissions "present an even more compelling case for applying the *Smith* rule, given the fact that he never directly confessed specifically to the crime for which he was convicted." *Id.* at 297.

■ Here, the State relied upon appellant's oral admission to Detective Herman that "the child had recently made disclosures to her that—of possible sexual assault." In light of the authorities above, we hold that this extrajudicial admission falls within the corpus delicti rule and is insufficient, by itself, to prove the corpus delicti of failing to report child abuse. Appellant's statement to Detective Herman, though partially exculpatory, was made after the fact to an official charged with investigating the possibility of wrongdoing, and the statement embraces an element vital to the State's case. *See Opper*, 348 U.S. at 90–92,

75 S.Ct. 158; *Smith*, 348 U.S. at 154–55, 75 S.Ct. 194. Appellant's statement formed the cornerstone of the State's theory of guilt. *See Smith*, 348 U.S. at 155, 75 S.Ct. 194.

Indeed, the purpose of the corpus delicti rule—to protect defendants from confessing to imaginary crimes due to mental infirmity or other reasons—is supported by the particular facts of this case. The State's witnesses testified that appellant was very upset and distraught at the time she made the admission, and appellant testified that she was "trying to fight for custody" of the child.

We now review whether there is any evidence to corroborate the corpus delicti.

## C. No Corroborating Evidence of Corpus Delicti

■ The parties agree that appellant was convicted of failing to report child abuse under the Family Code.[8] And the parties agree that to sustain appellant's

---

8. We analyze this case as the parties have, following the statutory language from the Family Code. The information by which appellant was charged, however, does not track the Family Code and more closely tracks the Penal Code offense of failure to stop or report aggravated sexual assault of a child. *See* Tex. Penal Code § 38.17. The State alleged:

> [Appellant], on or about the 21st day of March, 2014, in the County of Galveston and State of Texas, did did [sic] then and there fail to to [sic] assist or immediately report the commission of an offense under Texas Penal Code Section 21.01 [sic] or 22.021(a)(2)(B) to a peace officer or law enforcement agency, and the actor could assist the child or immediately report the commission of the offense without placing the actor in danger of suffering serious bodily injury or death.

*Compare* Tex. Penal Code § 38.17, *with* Tex. Fam. Code §§ 261.001(1)(E), 261.101(a), 261.109(a). The application paragraph of the jury charge, like the information, more closely tracks Section 38.17(a) of the Penal Code, but

some language from that statute is omitted, which appears to have broadened the offense here. *See* Tex. Penal Code 38.17(a)(1) (requiring the actor to have "observe[d] the commission or attempted commission of an offense prohibited by Section 21.02 or 22.021(a)(2)(B) under circumstances in which a reasonable person would believe that an offense of a sexual or assaultive nature was being committed or was about to be committed against the child"; requiring the actor to have a relationship with the child other than one "described by Section 22.04(b)" of the Penal Code).

Even considering appellant's extrajudicial admission, there is no evidence to satisfy the hypothetically correct jury charge under Section 38.17 of the Penal Code because there is no evidence appellant observed the commission or attempted commission of one of the proscribed offenses and failed to report it. *See* Tex. Penal Code § 38.17; *see also Malik v. State*, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997) (sufficiency of the evidence is measured against the hypothetically correct jury charge, which must be one that "accurately sets out the law" as "authorized by the

conviction, the State was required to prove that appellant had cause to believe abuse or neglect occurred and she failed to report it. *See Porter v. State*, 121 S.W.3d 404, 407 (Tex. App.—Amarillo 2003, pet. ref'd); *see also* Tex. Fam. Code § 261.101(a) ("A person having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter."). In particular, the State alleged in the information that appellant failed to "immediately report the commission of an offense under Texas Penal Code Section 21.01 [sic] or 22.021(a)(2)(B)."

■ Under the corpus delicti rule, our task is to consider all the record evidence other than appellant's extrajudicial statements, in the light most favorable to the jury's verdict, and determine whether the evidence tended to establish that someone had cause to believe the child was abused or neglected and the person failed to report it. *Cf. Fisher v. State*, 851 S.W.2d 298, 303 (Tex. Crim. App. 1993) (applying this standard to murder).

In *Smith v. State*, a father confessed to having intercourse with his underage daughter. 172 Tex.Crim. 554, 361 S.W.2d 390, 391–92 (Tex. Crim. App. 1962). The Court of Criminal Appeals reversed the conviction because although there was evidence that the child was not a virgin, there was no independent evidence that any person had sexual intercourse with the child at the time or place described in the confession or on or about the date alleged in the indictment. *Id. distinguished in Salazar*, 86 S.W.3d at 645–46.

Here, the only evidence the State presented to show that any person would have cause to believe abuse or neglect occurred about three weeks before appellant's extrajudicial statement was through Detective Herman's recollection of appellant's extrajudicial statement. There is no independent evidence tending to establish that on or about the time alleged in the indictment or at any time nearly three weeks before the extrajudicial admission, anyone had cause to believe that the child had been abused and the person knowingly failed to report. *See Smith*, 361 S.W.2d at 391–92. Although there is some evidence that appellant was concerned about the potential for child abuse—as evidenced by her testimony that she would not allow appellant unsupervised visits with the child due to the 2012 allegation—this evidence does not render the corpus delicti of failing to report abuse "more probable than it would be without the evidence." *See Julian*, 492 S.W.3d at 468.

Further, there is no independent evidence that anyone had cause to believe the father sexually assaulted the child consistent with appellant's extrajudicial admis-

---

indictment" even if the charging instrument is facially incomplete because it omits necessary elements).

Furthermore, although the abstract portion of the jury charge includes statutory language from the Family Code, the paragraph tracking Section 261.101(a) includes a phrase the Legislature deleted in 1997—"or may be." *See* Act of May 31, 1997, 75th Leg., R.S., ch. 1022, § 65, 1997 Tex. Gen. Laws 3733, 3760 ("A person having cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect by any person shall immediately make a report as provided by this sub-

chapter.") (codified at Tex. Fam. Code § 261.101(a)). We decline to address this unassigned jury charge error, *see Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006) (holding that courts of appeals may address unpreserved, unassigned jury charge error that is law applicable to the case), because our judgment concerning the sufficiency of the evidence grants appellant greater relief than that for jury charge error. *Cf. Hartis v. State*, 183 S.W.3d 793, 803 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (legal sufficiency should be addressed first because it would result in rendition of acquittal rather than remand for a new trial).

sion or as alleged by the State in the information. Although the State was not required to corroborate "each element and descriptive allegation" of failing to report child abuse, this case is not one where the defendant testified that "the crime occurred in a slightly different manner than appellant described in [the] out-of-court statement." *See Salazar*, 86 S.W.3d at 644, 646 (holding there was sufficient corroborating evidence of aggravated sexual assault when the defendant testified that he put the child's penis "on his mouth" but his extrajudicial confession was that he put the child's penis "in his mouth").

Accordingly, no independent evidence "assures that the very crime to which appellant confessed, and for which [she] was prosecuted, actually happened." *Id.* at 645. Appellant's issue is sustained.

### III.  Conclusion

Having sustained appellant's issue concerning the sufficiency of the evidence, we reverse the trial court's judgment and render a judgment of acquittal.