

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00356-CR

_____

TERRY LYNN TERLAJE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1203080D

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Terry Lynn Terlaje appeals the revocation of his deferred adjudication community supervision (DFAJ), the adjudication of his guilt for sexual assault, and his sentence of eight years' confinement. In one point, he contends that the trial court abused its discretion by revoking his DFAJ and adjudicating his guilt because the State did not prove that he violated his community-supervision conditions by committing the new offense of failing to comply with sex offender registration requirements. Because we hold that the evidence supported the trial court's decision but that the trial court's judgment contains a clerical error, we affirm the trial court's judgment as modified.

## I. Background

In 2011, Terlaje pled guilty pursuant to a plea bargain to sexually assaulting the adult sister of his then girlfriend. Honoring the bargain, the trial court placed Terlaje on DFAJ for six years and imposed a $600 fine and community-supervision conditions, including requirements that Terlaje "[c]ommit no offense against the laws of this State" and that he "[c]omply with sex offender registration procedures as required by the laws of this State."[1]

---

[1]In the spring of 2016, after Terlaje pled true to allegations that he had violated other community-supervision conditions, the trial court extended his DFAJ for two more years.

Because of Terlaje's sexual assault conviction, he had a lifetime duty to register as a sex offender. *See* Tex. Code Crim. Proc. Ann. arts. 62.001(5)(A) (defining "[r]eportable conviction or adjudication" to include a deferred adjudication for sexual assault), 62.001(6)(A) (defining "[s]exually violent offense" to include sexual assault), 62.101(a)(1) (providing that a person with a reportable conviction or adjudication for a sexually violent offense has a lifetime duty to register as a sex offender). Specifically, Terlaje was required to report to the "local law enforcement authority" to verify his registration annually within thirty days of his December birthday for the rest of his life. *Id.* art. 62.058(a), (c), (e); *see also id.* art. 62.051. If he did not reside at a physical address when verifying his registration annually, he was required to provide "a detailed description of each geographical location at which he "reside[d] or intend[ed] to reside." *Id.* art. 62.051(c)(1-a). If he did not have "a physical address assigned by a governmental entity," he was also required to provide the "local law enforcement authority" with "a detailed description of the geographical location where [he] reside[d] or intend[ed] to reside for more than [seven] days" and to report at least every thirty days to confirm his location until he had a physical address. *Id.* art. 62.055(i).

Terlaje was also required to comply with other sex offender statutes. For example, he was required to notify both his community-supervision officer and the "local law enforcement authority" at least seven days before an intended move and within seven days after a move. *Id.* art. 62.055(a).

In April 2011, a week after Terlaje was placed on DFAJ, a Tarrant County community-supervision officer discussed the registration rules and laws with Terlaje at length, warning him that failure to comply would result in a new felony charge. As early as September 2012, Terlaje signed a Texas Department of Safety (DPS) form stating the registration requirements and initialed each requirement. In 2013, when Terlaje lost his housing, his community-supervision officer instructed him to check in daily with the address of where he would be staying that night until he found a permanent place.

After Terlaje lost another permanent residence in December 2014, his community-supervision officer suggested that he stay at the Fort Worth Presbyterian Night Shelter. Terlaje wanted to sleep in his car and told the community-supervision officer that the Fort Worth Police Department (FWPD) would allow him to do that if he slept within a two-block radius of the shelter, but even if the FWPD would have countenanced that arrangement, the community-supervision department did not. Terlaje began staying at the shelter and soon became a resident. As a resident of the shelter, unlike an overnight guest, he had a guaranteed bed each night. Nevertheless, Terlaje told his community-supervision officer that he would have to check in monthly with the FWPD because the shelter was listed as his residence.

In December 2015 and December 2016, in accordance with the FWPD's[2] policy at the time, Terlaje verified his address on the DPS Sex Offender Registry form (registration form) used by the FWPD as "[t]ransient within two blocks of 2400 Cyprus Street [(the shelter's street address)] in Fort Worth" even though he was a resident of the shelter. However, between 2016 and 2017, the FWPD dropped the "two-block rule." Because sex offenders residing in homeless shelters had government-assigned physical addresses (the shelters' addresses), the FWPD no longer considered them transient. Sex offenders who were transient, on the other hand, were required to give a detailed geographical description of where they lived. *See id.* art. 62.055(i). Terlaje's annual registration form for 2017 showed that his primary address was 2400 Cypress Street; the "transient within two blocks of" language that had been in his two prior annual forms was absent.

Terlaje remained a resident of the shelter until late June 2018. In June 2017, the shelter had placed Terlaje in the Rapid Rehousing program, which would assist with finding him permanent housing and help him with rent for six months. In January 2018, Terlaje told the community-supervision officer that he was worried that the program would not work for him because even after six months of financial

---

[2]One of the State's theories was that Terlaje had moved to the Euless apartment of his girlfriend and children. Without addressing the strength of the evidence supporting that theory, we resolve this case based on the theory that after his discharge from the shelter, Terlaje resided in Fort Worth. Thus, Terlaje's "local law enforcement authority" for the purposes of this opinion was the FWPD.

assistance, he would be unable to afford rent on his own and could get evicted and become homeless again. In April 2018, Terlaje told the community-supervision officer that his caseworker at the shelter had told him to develop a plan to leave the shelter. In June 2018, Terlaje quit the Rapid Rehousing program. In addition to the reasons he had given his community-supervision officer, Terlaje also testified that he was afraid that after an eviction, he would have an even harder time finding housing for his girlfriend, children, and himself in the future due to his status as a sex offender.

After Terlaje quit the Rapid Rehousing program, the shelter discharged him as a resident. He could have chosen to return to the shelter as an overnight guest, but Terlaje worked days in Irving, so he likely would have seldom appeared at the shelter soon enough to secure a bed under the first-come, first-served system the shelter used for accepting overnight guests. According to the shelter's vice-president of operations, Terlaje never checked into the shelter again after June 25, 2018.

Although Terlaje informed his girlfriend that the shelter had kicked him out, and although the only place his boss "knew that he lived was . . . in his car," Terlaje did not report to the FWPD or to his community-supervision officer that he was no longer a resident at the shelter and did not modify his registration records. In his December 12, 2018 registration form, he again stated that he was living at 2400 Cypress Street, giving no geographic details of where he lived even though he had not lived in the shelter for almost six months. Above his signature, the form stated in bold, "I verify the above information is complete and accurate." Below his

thumbprint, the signed form stated in bold, "This is a true and exact copy of information sent electronically to [DPS]."

Officer Andrew Dilbeck of the FWPD Sex Offender Registration Tracking (SORT) unit testified that the information gathered during a registrant's yearly update is uploaded to the statewide sex offender database kept by DPS. Admitted through Officer Dilbeck was Defendant's Exhibit 1, a printout of a computer screen from the DPS Texas Secure Sex Offender Registry setting forth details of Terlaje's most recent annual update, including the reported residential address. Unlike the 2018 FWPD registration form, the printout stated that as of December 12, 2018, Terlaje's address was "transient, within two blocks of 2400 Cypress Street." Like the FWPD registration form, the unsigned printout also purported to be "a true and exact copy of information sent electronically to [DPS]."

Terlaje's trial counsel questioned Officer Dilbeck about the discrepancy between the 2018 FWPD registration form and the DPS Registry printout—that is, why one showed that Terlaje resided at 2400 Cypress Street and the other showed that he lived within two blocks of that address. Officer Dilbeck explained that the DPS record should mirror Terlaje's latest annual registration form. Regardless, since Terlaje reported 2400 Cypress Street as his address to the FWPD and in the 2018 FWPD registration form, the FWPD understood that Terlaje claimed to live inside the shelter.

Officer Thomas Johnson, the FWPD SORT officer who met with Terlaje for his 2018 registration, had been in the SORT unit for only a few weeks at that time and less than a year by the time of the revocation hearing. Officer Johnson had never used the two-block rule. However, he had seen the term in registration documents that officers (not DPS) uploaded to the DPS website. Officer Johnson testified that for transients, he would ask for both a block number and a geographical location: "[I]f they're staying under a tree, . . . I get a description of that tree." Had Terlaje told Officer Johnson that he was living in his car, that information would have been noted on the registration form's address. It was not.

Johnson stated that as of the 2019 revocation hearing, he asked registrants claiming shelter addresses if they lived inside or outside and for geographic details of where those who lived outside stayed but that he probably did not ask those questions of Terlaje. Instead, when Terlaje gave him the shelter's address with no further information, Johnson would have presumed that Terlaje lived inside the shelter.

In March 2019, Officer Dilbeck conducted a compliance check at the shelter to confirm that Terlaje was living at his reported address and discovered that Terlaje was not living there. After further investigation, Officer Dilbeck secured a warrant for Terlaje's arrest and discussed the matter with Terlaje's community-supervision officer.

Evidence conflicted on whether Terlaje told a community-supervision officer that he had been discharged from the shelter. Although Terlaje testified that he was pretty sure that he had told one of his community-supervision officers that the shelter

8

had kicked him out, State's Exhibit 22, the community-supervision department's chronological record of its contacts with Terlaje, did not show that he had done so before his community-supervision officer brought it up on the day of his arrest. Similarly, Terlaje's community-supervision officer testified that even though she had covered basic address and information update questions at every meeting with him, Terlaje did not tell her that he had moved out of the shelter and was living in his car until after the FWPD contacted her about his failure to update his registration, and then only after she initiated the discussion. Even in that discussion, Terlaje lied, telling her that he had been discharged from the shelter in November 2018, not June 2018. The community-supervision department's chronology of contacts with Terlaje showed that before a warrant was issued for his arrest, he not only had several opportunities to tell his assigned community-supervision officer but also had numerous chances to tell field community-supervision officers who visited him at the shelter that he had been discharged as a resident of the shelter and was instead sleeping in his car. He never volunteered the information.

Terlaje testified that after his discharge from the shelter, 99% of the time he slept in his car in the shelter's parking lot or on the street near it. Officer Dilbeck testified that the shelter did not allow people to sleep in their vehicles in the shelter's parking lot and that there was no parking in front of the shelter. The shelter's vice-president of operations testified that the shelter did not allow people to stay in their vehicle in the shelter parking lot and that he had called the police to tow unauthorized

9

vehicles from the lot. He also testified that street parking around the shelter was limited, with a few legal spaces during the day. Most of the spaces in front of the shelter were "no parking" spaces, but people parked there occasionally. There were no legal overnight parking spaces. He conceded that his workdays ended at 6:00 p.m., so he would not know what happened at night.

The State filed a petition to adjudicate alleging that Terlaje had violated the terms and conditions of his DFAJ by committing "the offense of SEX OFFENDERS DUTY TO REGISTER LIFE/ANNUALLY on or about" March 12, 2019.[3] The trial court interpreted the alleged offense as "the offense of failure to register, sex offender duty to register for life annually, and that occurred on or about the 12th day of March of 2019 in Tarrant County, Texas," and stated that "[t]he December [2018] registration is the most recent and is the basis and the period under which these accusations fall."

Despite the conflict between Terlaje's 2018 registration form and the printout from the DPS website, the trial court held that the two-block rule did not satisfy "the detailed description of the geographical location" statutorily required by homeless registrants. *See id.* arts. 62.051(c)(1-a), 62.055(i). The trial court ruled that by proving that Terlaje was no longer living inside the shelter, the State proved the alleged

---

[3]The petition did not specify which community-supervision conditions Terlaje had allegedly violated; Terlaje does not raise a related complaint.

violation of his conditions of community supervision. After adjudicating Terlaje's guilt and sentencing him, the trial court indicated that a higher court could clarify "the legal issue [whether] living in a car on the premises count[s] if [the registrant is] not in the physical location of a government-established address," but the trial court also indicated that the resolution of that issue "wouldn't necessarily clear" Terlaje. The trial court did not find Terlaje credible.

## II. Discussion

In his sole point, Terlaje contends that the trial court abused its discretion by revoking his DFAJ and adjudicating his guilt.

### A. Standard of Review

In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). That is, the State must prove that the greater weight of credible evidence creates a reasonable belief that the defendant violated a community-supervision condition. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Rickels*, 202 S.W.3d at 764. The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Hacker*, 389 S.W.3d at 865; *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). Regardless of the reasons given by the trial court for revoking community supervision,

11

if there is evidence supporting the court's decision, we will not disturb it on appeal. *Lennox v. State*, No. 14-99-00205-CR, 2000 WL 424022, at *2 (Tex. App.—Houston [14th Dist.] Apr. 20, 2000, pet. ref'd) (not designated for publication); *Willis v. State*, 2 S.W.3d 397, 399 (Tex. App.—Austin 1999, no pet.).

## B. Substantive Law

A person commits the offense of failing to register as a sex offender if he is required to so register and fails to comply with any requirement of Chapter 62 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 62.102(a); *Febus v. State*, 542 S.W.3d 568, 573 (Tex. Crim. App. 2018). The culpable mental states of knowledge and recklessness attach to the duty-to-register element; no culpable mental state attaches to the failure-to-comply element. *Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015).

That Terlaje was required to register is not at issue. As a sex offender, Terlaje had a lifetime duty to register as a sex offender and was required to update his registration every year within thirty days of his birthday. *See* Tex. Code Crim. Proc. Ann. arts. 62.001(5)(A), 62.058(a). Among other items, the registration form requires "the address at which the person resides or intends to reside or, if the person does not reside or intend to reside at a physical address, a detailed description of each geographical location at which the person resides or intends to reside." *Id.* art. 62.051(c)(1-a). When verifying registration, a sex offender must "ensure that [his] registration form is complete and accurate with respect to each item of information

12

required by the form in accordance with Subsection (c)." *Id.* art. 62.051(g). A sex offender "may not refuse or otherwise fail to provide any information required for the accurate completion of the registration form." *Id.* art. 62.051(k).

Terlaje was also required to report an intended address change at least seven days in advance to the FWPD and his community-supervision officer and provide them with the new address and his anticipated move date. *Id.* art. 62.055(a). Evidence that a registered address has been vacated as of a particular day is evidence that a registrant intended to move on that date, *Gilder v. State*, 469 S.W.3d 636, 640–41 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd), and evidence that a registrant was living at a new address as of a particular date was sufficient to show an intent to move on that date, *Thomas v. State*, 444 S.W.3d 4, 9–10 (Tex. Crim. App. 2014). "[W]itnesses' testimony is circumstantial evidence that is as probative as direct evidence in establishing [a registrant's] intent to change his address and establish a residence . . . ." *Julian v. State*, 492 S.W.3d 462, 467 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (internal quotation marks and citation omitted).

Finally, if Terlaje did not have "a physical address assigned by a governmental unit," he was required to provide the proper authority with "a detailed description of the geographical location where [he] reside[d] or intend[ed] to reside for more than [seven] days" and to report to the FWPD at least every thirty days to confirm his location until he had a physical address. Tex. Code Crim. Proc. Ann. art. 62.055(i).

13

## C. Analysis

On appeal, the parties appear to agree that the alleged offense of failure to register as a sex offender was based on Terlaje's failure to report a change of address after the shelter discharged him. Terlaje's theory of the case at the revocation hearing was and on appeal is that he never moved from the shelter. Terlaje does not challenge the statutory requirement that he provide a "detailed description of the geographical location" where he resided after the shelter discharged him, even though it is this requirement upon which the trial court based its finding that Terlaje had violated the condition of community supervision requiring that he commit no new offense. Instead, Terlaje relies on the two-block rule. He argues that the two-block rule is a DPS rule that he followed: he did not change his address, he remained homeless, he slept in his car within two blocks of the shelter, as required by DPS, and he reported the shelter's address to the FWPD. The State responds that the trial court did not abuse its discretion by revoking Terlaje's DFAJ and adjudicating his guilt, that the two-block rule the FWPD (not DPS) had applied in the past no longer applied by Terlaje's 2017 annual registration, that by living in his car near the shelter Terlaje was not residing in the shelter, and that he failed to report that change of address.[4]

---

[4]We do not reach the State's alternative theory that Terlaje had moved in with his family in their Euless apartment after he left the shelter in June 2018. *See* Tex. R. App. 47.1.

We hold that neither the record nor Terlaje's brief demonstrates that the two-block rule is a DPS mandate and that the trial court did not abuse its discretion by revoking Terlaje's community supervision and adjudicating his guilt for sexual assault. The evidence sufficiently showed that in the period between June 25, 2018, and March 12, 2019, when Officer Dilbeck discovered that Terlaje no longer resided in the shelter, Terlaje violated Chapter 62's registration requirements by not updating his address in his 2018 annual verification to the FWPD. *See id.* art. 62.051. Even if the trial court had believed that Terlaje was living within a two-block radius of the shelter after leaving the shelter, Terlaje nevertheless failed to apprise the FWPD of that change because he did not provide the FWPD "a detailed description of the geographical location where [he] reside[d] or intend[ed] to reside for more than [seven] days." *Id.* 62.051(c)(1-a). He also failed to apprise his community-supervision officer of his address change. *See id.* art. 62.055(a). Finally, in his monthly FWPD check-ins since his discharge from the shelter, he failed to provide "a detailed description of the applicable location or locations" where he was residing. *See id.* art. 62.055(i).

Terlaje premises his argument on the assumption that DPS created the two-block rule. Nothing in the record or Terlaje's brief supports that assumption. Instead, the evidence shows that the two-block rule was a guideline the FWPD formerly used for enforcing registration requirements on homeless registrants and that the FWPD stopped using that guideline by the time Terlaje updated his registration for 2017. Our

15

own research shows no other genesis for any two-block rule. *See* 37 Tex. Admin. Code Ann. §§ 37.1–.3 (listing DPS's "Sex Offender Registration" provisions).

Terlaje highlights Officer Dilbeck's incorrect testimony indicating that the relevant statutes in Chapter 62 of the Texas Code of Criminal Procedure governing homeless registrants had recently changed before Terlaje's 2017 registration. While we agree with Terlaje that the relevant provisions in Chapter 62 did not change between 2015 and 2018, they did change in 2009,[5] and viewing the evidence in the light most favorable to the trial court's decision, *see Hacker*, 389 S.W.3d at 865; *Cardona*, 665 S.W.2d at 493, the FWPD updated its policy in 2017 to better track the statutory language. The absence of the "transient within two blocks of" language from Terlaje's 2017 registration form supports that inference.

Terlaje also focuses on a discrepancy between the December 12, 2018 registration form and the printout of information purporting to be from the same date that appeared on the DPS Registry. Terlaje's December 12, 2018 registration form filed with the FWPD provided that he was living at 2400 Cypress Street, with no detailed geographic description of where he was staying, even though he had not lived in the shelter for more than five months. Terlaje verified by his signature that the information was "complete and accurate," and the

---

[5]Act of May 31, 2009, 81st Leg., R.S., ch. 661, § 2, art. 62.051(c)(1), §§ 4, 5, art. 62.055(i), 2009 Tex. Gen. Laws 1481, 1483 (eff. Sept. 1, 2009) (current versions at Tex. Code Crim. Proc. Ann. arts. 62.051(c)(1), 62.055(i)).

form stated that it was "a true and exact copy of information sent electronically to [DPS]." However, the DPS Registry printout provided that as of December 12, 2018, Terlaje's address was transient, within two blocks of 2400 Cypress Street. This printout also claimed to be "a true and exact copy of information sent electronically to [DPS]."

It is on this DPS Registry printout that Terlaje premises his theory that DPS issued the two-block mandate and that we are bound by it. However, no source Terlaje relies on in his brief transforms the DPS Registry printout to a DPS rule. Instead, as the conflicting 2018 registration form and 2018 DPS Registry printout both provide, they are "information" sent to DPS; that is, the conflicting documents are mere evidence. We review the evidence in the light most favorable to the trial court's ruling. *See Hacker*, 389 S.W.3d at 865; *Cardona*, 665 S.W.2d at 493. We therefore hold that the evidence supports the trial court's implicit decision that the two-block rule was a former FWPD guideline that was no longer in use by June 2018. Officer Johnson's testimony that DPS did not enter the information in the registry only strengthens this conclusion.

In a footnote, Terlaje also argues,

Should the Court not find that the rules, practices and procedures promulgated by DPS are preeminent, the rule of lenity would demand that [Terlaje's] interpretation should control. Under section 311.035 of the Government Code, a statute or rule outside of the Penal Code or Health & Safety Code that creates or defines a criminal offense or penalty shall be construed in favor of the actor if any part of the statute or rule is ambiguous on its face or as applied to the case. *See* Tex. Gov't

17

Code Ann. § 311.035; *see also State v. Cortez*, 543 S.W.3d 198, 210 (Tex. Crim. App. 2018) (citing *United States v. Santos*, 553 U.S. 507, 514, 128 S. Ct. 2020 (2008) ("Under a long line of our decisions, the tie must go to the defendant."). Here, the Code of Criminal Procedure is outside of the Penal Code and Health & Safety Code, and a rule or statute is ambiguous as applied in this case. Under such circumstances, the United States Supreme Court has directed that, "the tie must go to the defendant." *United States v. Santos*, 553 U.S. at 514.

We have held that neither the evidence nor Terlaje's briefing shows that DPS promulgated the former two-block rule. Beyond his rejected arguments that DPS created a mandatory two-block rule, Terlaje does not offer a statutory interpretation, nor does he identify which "rule or statute" is ambiguous as applied to this case. We decline to make his arguments for him. *See* Tex. R. App. P. 38.1(i); *cf. Jackson v. State*, 424 S.W.3d 140, 155 (Tex. App.—Texarkana 2014, pet. ref'd) (holding that appellant's discussing the legal requirements for the exclusion of evidence under Rule 403 without analyzing, arguing, or citing to the record to support his contention that the trial court erred by admitting objected-to evidence presented nothing for review).

To show that he had not moved and that the FWPD knew he was homeless, Terlaje points out that he reported to the FWPD every thirty days, as required for registrants who are transient. *See* Tex. Code Crim. Proc. Ann. art. 62.055(i)(1). Terlaje argues that reporting monthly would make no sense unless he had been told to do so based on his homeless status. The record shows, however, that Terlaje began reporting monthly in early 2015, soon after he moved to the shelter, and that he had told his community-supervision officer that he was required to report to the FWPD

18

monthly as long as he lived at the shelter. Consequently, the record ties Terlaje's monthly reporting to his continuing to reside at the shelter, not to his alleged homelessness after his discharge from the shelter. The record does not show that he ever stopped reporting monthly, supporting the inference that he did not. *See Hacker*, 389 S.W.3d at 865; *Cardona*, 665 S.W.2d at 493. Thus, that Terlaje was still reporting monthly to the FWPD after moving from the shelter—whether to his car within a two-block radius of the shelter or to some other location or locations—did not demonstrate that where he resided remained constant after his June 2018 discharge from the shelter, nor did it show that he had notified the FWPD that he had been discharged from the shelter or was homeless, nor did it show that he provided the FWPD with a new physical address or "a detailed description of the applicable location or locations" where he resided if he resided more than seven days at a place which the government had not assigned a physical address. *See* Tex. Code Crim. Proc. Ann. arts. 62.051, 62.055(a), (i). His continued monthly reporting to the FWPD signaled neither the FWPD nor his community-supervision officer of the change in his residence; it signaled no change at all.

Viewing the evidence in the light most favorable to revocation, we hold that the State sufficiently proved that Terlaje had committed the new offense of failing to register as a sex offender. First, the evidence showed that Terlaje knew he had a duty to register as a sex offender and was aware of the related requirements. *See Febus*, 542 S.W.3d 573, 576. A Tarrant County community-supervision officer discussed the

19

registration rules and laws with Terlaje at length within a week of his being placed on DFAJ, and in September 2012, he signed and initialed a DPS form reciting the registration requirements, including those applicable to people not living at a physical address.

Second, the State also sufficiently proved that Terlaje had failed to comply with registration requirements of Chapter 62 by reporting that he lived at the shelter when he did not. *See, e.g.*, *Evans v. State*, No. 13-18-00658-CR, 2019 WL 3955459, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 22, 2019, no pet.) (mem. op., not designated for publication) (holding that even if the trial court believed appellant had stayed at the shelter that he had represented was his address for one night, the State had sufficiently proved that appellant had violated a community-supervision condition and sex-offender registration requirements by not registering a new address thereafter). Neither the State nor Terlaje dispute that he was discharged from the shelter on June 25, 2018. Evidence that Terlaje was discharged from the shelter on that date and did not stay there afterward is evidence of intent to move on that date. *See Gilder*, 469 S.W.3d at 640–41. Viewing the evidence in the light most favorable to the ruling, it showed that in the almost nine months since Terlaje had resided in the shelter, he had numerous chances to inform the FWPD and the community-supervision department that he no longer resided there, but he did not inform them.

Even if the two-block rule had still been in force, the trial court did not believe Terlaje's representations that after the shelter discharged him, he slept in his car

within view of the shelter, whether in front of it, across the street, or in its parking lot, 99% of the time. *See Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014) (noting that a factfinder has discretion to believe uncontroverted testimony). Further, the State had no duty to prove where Terlaje resided after the shelter discharged him. It was sufficient for the State to establish that he stopped residing in the shelter without timely informing the proper authorities. *See Thomas*, 444 S.W.3d at 10–11; *Burnett v. State*, 506 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Accordingly, we hold that the trial court did not abuse its discretion by revoking Terlaje's DFAJ, adjudicating his guilt, and sentencing him. We overrule Terlaje's sole point.

## D. Correcting the Judgment

We note that although the record shows that Terlaje pled "not true" to the alleged violation, the trial court's written judgment incorrectly reflects that he pled "true." An appellate court may modify the trial court's judgment to make the record speak the truth if the court has the necessary data and evidence to do so. Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). We therefore modify the trial court's judgment to reflect a plea of "Not True" to the petition to adjudicate.

## III. Conclusion

Having overruled Terlaje's sole point, we affirm the trial court's judgment as modified.

21

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 11, 2021