

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00127-CR

DARNYL ROBERTS HENDERSON                                        APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NO. 1486901R

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Darnyl Roberts Henderson on three counts of violating Chapter 62 of the Texas Code of Criminal Procedure for failing to register as a sex offender. Tex. Code Crim. Proc. Ann. art. 62.102 (West 2018). The trial court assessed Appellant's punishment at four years' confinement for

---

[1]*See* Tex. R. App. P. 47.4.

each count, with the four-year sentences to run concurrently. In three issues, Appellant argues that the State's evidence was insufficient to establish that he moved his residence or intended to change his registered address—first to Arlington and then to a motel in Fort Worth—which would have triggered his duty to report and register his new address. Because the evidence at trial is sufficient to support the jury's verdict, we will affirm the trial court's judgment.

## II. BACKGROUND

In 2000, Appellant was convicted of aggravated sexual assault of a child under 14 years of age, a "reportable conviction." Appellant is thus required to annually register as a sex offender for the rest of his life. Upon his release from prison, Appellant registered as a sex offender with the Fort Worth Police Department (FWPD), and as of June 2, 2015, Appellant's registered address with the FWPD was 2816 Hemphill Street, Fort Worth, Texas, 76110 (Hemphill Address).

On June 18, 2015, Patrol Officer A. Williams of the Arlington Police Department (APD) responded to a report that Appellant was allegedly taking photographs of children at a swimming pool in a trailer park community in Arlington, Texas. Although Appellant was not arrested, the encounter prompted an investigation into whether he was properly registered as a sex offender. After the investigation, a warrant for Appellant's arrest was issued on December 29, 2015, and on January 7, 2016, he was arrested at his place of employment.

Appellant was indicted on three counts of failing to register as a sex offender. The first count alleged that on or about June 10, 2015, Appellant had failed to provide the APD with his new Arlington address not later than seven days after changing his residence to Arlington. The second count alleged that on or about June 1, 2015, Appellant had failed to notify the FWPD of his anticipated move date and new Arlington address not later than seven days before Appellant's intended change of residence. The third count alleged that on or about December 1, 2015, Appellant failed to report to the FWPD of his anticipated move date and new address not later than seven days before his intended change of residence to a motel in Fort Worth. Appellant pleaded not guilty and the case was tried to a jury.

The State's first witness was J. Garcia, a deputy with the detention bureau of the Tarrant County Sheriff's Department. Deputy Garcia testified that his job requires him to analyze fingerprints and that after analyzing the fingerprints on the State's exhibits—which included a ten-print card, Tarrant County Jail Records, a Pre-Release Notification Form of the Texas Sex Offender Registration Program, a Sex Offender Registration Program Update form, and Appellant's prior judgment—he concluded that the fingerprints were Appellant's.

The State next called Tracy Tillerson, who is now retired but formerly worked as the detective in charge of the FWPD's sex offender registration program. Ms. Tillerson testified that she assisted Appellant in his initial

3

registration in 2010. Ms. Tillerson also testified concerning the requirements of registration.

Detective R. Sabo, a records custodian for the FWPD's sex offender registration unit, then testified that his unit maintains a file on Appellant and that Appellant had updated his registration several times through June 2, 2015. Sabo affirmed that between June 2, 2015 and January 27, 2016, Appellant's registered address with the FWPD was the Hemphill Address and that the FWPD had no records of Appellant changing his address during that period of time.

Officer Williams testified that on June 18, 2015, he was dispatched to the Arlington trailer park swimming pool where he encountered Appellant, who had been allegedly taking photographs of children. While Officer Williams initially testified that Appellant said he had been living in the trailer park for "like, seven days[,]" Officer Williams later testified unequivocally that Appellant had stated that he had been staying at the trailer park for seven days:

> [PROSECUTOR]. He was at the trailer park? And how long did he tell you he'd been staying there?
>
> [OFFICER WILLIAMS]. He said seven days.
>
> [DEFENSE COUNSEL]. Do you remember if he actually said seven days? Could it have been that he said a week?
>
> [OFFICER WILLIAMS]. No, he said seven days.
>
> [DEFENSE COUNSEL]. Okay. He couldn't have said it's been a while or it's been a few days?
>
> [OFFICER WILLIAMS]. No, he said seven days.

4

[DEFENSE COUNSEL]. Okay. So you're confident that he said seven days?

[OFFICER WILLIAMS]. Yes.

[DEFENSE COUNSEL]. So it wasn't like seven days, it was actually seven days?

[OFFICER WILLIAMS]. He said seven days.

Officer Williams further testified that when Appellant provided his sex offender registration card, it indicated that Appellant's residence was at a location in Fort Worth. Appellant told Officer Williams that he had not contacted anyone with the APD about his registration. Officer Williams did, however, testify that Appellant stated that he had spoken to someone in Fort Worth about possibly moving or changing his address, but Officer Williams's testimony did not specify whether the someone Appellant spoke to was with the FWPD. Officer Williams testified that no charges were filed against Appellant following the June 18, 2015 incident and Detective B. Landolt was in charge of further investigation.

The State called Appellant's uncle, Gregory Carbajal, who testified that Appellant had been living with him at the Arlington trailer park for approximately three-and-a-half weeks—about three weeks before the June 18, 2015 incident and several days after the June 18, 2015 incident. Carbajal testified that Appellant had called and asked Carbajal if he could stay with him because Appellant was living on the street. Carbajal testified that Appellant brought clothes and stayed at his house every night during the three-and-a-half weeks. However, on cross-examination, Carbajal testified that because he was out of

5

town working as a truck driver in the days before and after June 18, 2015, he could not be certain that Appellant actually spent those nights at Carbajal's home. Upon learning of the June 18, 2015 incident, Carbajal asked Appellant to leave, which Appellant did about two days later.

Detective Landolt, of the APD's sex crimes unit, identified Appellant in court and testified that he first became aware of Appellant after the June 18, 2015 incident. Detective Landolt testified that he began investigating whether Appellant was properly registered as a sex offender and that based on his interview with Carbajal, he believed Appellant had been living in Arlington for more than seven days. So, Detective Landolt went to Appellant's registered Hemphill Address in Fort Worth. Detective Landolt testified that the house on Hemphill had a "For Sale" sign in the yard, a key lockbox on the front door, a padlock and chain on the back gate, and an overgrown yard and that the house appeared vacant.

Detective Landolt eventually learned that Appellant may have been staying at a motel in Fort Worth, so he went to the motel and interviewed Terry Smoot, an employee of the motel. Based on that interview, Detective Landolt concluded that Appellant was living at the motel in violation of his duty to register. Detective Landolt testified that his investigation showed that at all relevant times Appellant's registered address was the Hemphill Address and that no paperwork had been submitted nor any other updates made to indicate that Appellant had changed his address, either to the trailer park in Arlington or to the motel in Fort

6

Worth. Detective Landolt also testified that when he interviewed Appellant at the Arlington jail, Appellant agreed that the house at the Hemphill Address had been "shut down" for almost a year.

Smoot testified that on the day Appellant was arrested—January 7, 2016—Appellant called to say that he was in jail and asked Smoot not to tow Appellant's car. Smoot testified that at that time, Appellant had been living at the Fort Worth motel for approximately two or three months. Smoot, who also lives at the Fort Worth motel, testified that although he did not see Appellant return to the motel every night, he did see Appellant leave and return to the motel "[n]ot every single day, but -- but pretty much." Smoot testified that Appellant paid $170 per week to stay in Room 12 and for a garage where he kept a vehicle.

The State's final witness was Paul Archibald, who is retired but formerly worked for the FWPD's sex offender registration and monitoring unit. Archibald testified that he was familiar with Appellant's registration at the Hemphill Address and that he had no knowledge of Appellant ever changing his address.

Appellant did not present any witnesses.

After deliberation, the jury returned a verdict of guilty on all three counts. Appellant elected to have the trial court assess punishment, and the trial court assessed punishment at four years for each count with the sentences to run concurrently. Appellant timely filed his notice of appeal.

7

### III. STANDARD OF REVIEW

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33.

8

To determine whether the State has met its burden under *Jackson* to prove a defendant's guilt beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Jenkins*, 493 S.W.3d at 599; *Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Jenkins*, 493 S.W.3d at 599. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins*, 493 S.W.3d at 599. Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that

9

supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

## IV. DISCUSSION

### A. The Law

"A person commits the offense of failure to comply with sex offender registration requirements if he is required to register and fails to comply with any requirement of Chapter 62 of the Code of Criminal Procedure." *Silber v. State*, 371 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (internal quotation marks omitted); Tex. Code Crim. Proc. Ann. art. 62.102.

A person with a "reportable conviction" must register with "the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days." Tex. Code Crim. Proc. Ann. art. 62.051(a) (West 2018). Additionally, if a person who is required to register under the sex offender registration program intends to change addresses, he must report the change in person to the local law enforcement authority designated as his primary registration authority not later than the seventh day before the intended change. Tex. Code Crim. Proc. Ann. art. 62.055(a) (West 2018). Finally, if the person moves to a new residence, he must report to the local law enforcement authority where the new residence is located, not later than the seventh day after the move. *Id.*

10

Under chapter 62, "[t]he forbidden act is failing to inform law enforcement about an impending or completed change of residence." *Young v. State*, 341 S.W.3d 417, 426 (Tex. Crim. App. 2011). There is no definition of "residence" in chapter 62, but in the context of a defendant's alleged failure to inform his probation officer of a change in residence, the Court of Criminal Appeals has opined that

> [r]esidence is an elastic term. The meaning that must be given to it depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide, at that moment the residence is fixed and determined.

*Whitney v. State*, 472 S.W.2d 524, 525 (Tex. Crim. App. 1971). Thus, we will utilize this definition of residence in our analysis. *See Julian v. State*, 492 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

**B. The Evidence is Sufficient to Establish that Appellant Moved to the Arlington Trailer Park, Triggering His Duty to Register**

In Counts One and Two, Appellant was required but failed, respectively, to register with APD not later than seven days after moving to Arlington and to notify the FWPD not later than seven days before moving to Arlington. Count One alleged the date of the violation occurred on or about June 10, 2015. Count Two alleged the date of the violation occurred on or about June 1, 2015. Although Appellant acknowledges that Counts One and Two "both revolve around whether [he] established residence with his uncle at the trailer park in Arlington, Texas[,]" Appellant contends that the evidence was insufficient to show

11

that he actually changed his residence to Arlington. Thus, Appellant does not challenge the dates of the violations or claim that he in fact did notify APD or FWPD of an impending change or a completed change of residence. Rather, Appellant contends that the evidence was insufficient to show that he actually *changed* or *intended to change* his residence, so that he had no duty to update his sex offender registration address.

At trial, Carbajal testified that Appellant asked to stay with him because he did not have a place to live. Carbajal testified that Appellant lived with him for approximately three-and-a-half weeks—for about three weeks before and several days after the June 18, 2015 incident—and that Appellant had moved his clothes to Carbajal's residence. Officer Williams testified that on June 18, 2015, Appellant stated that he had lived with his uncle for seven days.

Whether Appellant lived with Carbajal for seven days or three weeks, this evidence is sufficient to demonstrate that Appellant established a bodily presence and intent to reside at his uncle's Arlington trailer home. *See Thomas v. State*, 444 S.W.3d 4, 10–11 (Tex. Crim. App. 2014) (holding that evidence a defendant was living at a new address as of a particular day was sufficient for a jury to have reasonably concluded that he intended to change addresses on that date). Although Officer Williams did testify that Appellant stated he had spoken with someone in Fort Worth about moving, Officer Williams testified that Appellant admitted that he had not spoken to anyone in Arlington about moving there. And, Detective Landolt testified that Appellant's registered address was

the Hemphill Address and that no paperwork had been submitted to indicate that Appellant had changed his address. Detective Landolt also testified that a "For Sale" sign was posted at the Hemphill house, a lockbox was on the front door, a padlock was on the back gate, and the home's yard was overgrown. In short, the house appeared vacant. Detective Sabo testified that Appellant had not changed his address from the Hemphill Address during this time.

Deferring to the factfinder on issues of weight and credibility, we hold that the cumulative force of this evidence viewed in the light most favorable to the verdict is sufficient for a reasonable jury to conclude that on or about June 10, 2015, Appellant intentionally or knowingly failed to report his new Arlington address, proof of identity, or proof of residence to the APD not later than seven days after he had moved to Arlington, and that on or about June 1, 2015, Appellant intentionally or knowingly failed to report his anticipated move date and new address to FWPD not later than seven days before he intended to move to Arlington. *See Gilder v. State*, 469 S.W.3d 636, 641 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding testimony that appellant's registered address was vacant coupled with evidence that appellant was living at new address was legally sufficient to affirm appellant's conviction for failure to comply with sex-offender-registry requirement); *Mantooth v. State*, 269 S.W.3d 68, 77 (Tex. App.—Texarkana 2008, no pet.) (holding evidence that appellant's registered address appeared vacant was legally sufficient to support guilty verdict for failing to register).

13

We overrule Appellant's first two issues.

## C. The Evidence is Sufficient to Establish that Appellant Moved to the Fort Worth Motel, Triggering His Duty to Register

In convicting Appellant on Count Three, the jury concluded that on or about December 1, 2015, Appellant intended to move within the same jurisdiction but had failed to report the new Fort Worth motel address to the FWPD, not later than seven days before intending to move. Appellant argues the evidence is insufficient to establish that the Fort Worth motel was as his residence, so that he had no duty to report the motel as his new address to FWPD.

Smoot testified that Appellant lived at the Fort Worth motel, and that at the time Appellant was arrested and called Smoot—January 7, 2016—Appellant had been living at the Fort Worth motel for approximately two or three months. Smoot, who also lives at the Fort Worth motel, testified that although he did not see Appellant return to the motel every night, he did see Appellant leave and return to the motel "[n]ot every single day, but -- but pretty much." Smoot further testified that Appellant paid $170 per week to rent a room and a garage for his vehicle. Appellant nonetheless claims that Smoot testified Appellant had lived at the motel only since around Christmas and that because Appellant was arrested January 7, 2016, the longest Appellant could have lived at the motel was a week or two, making Smoot's testimony is fatally inconsistent. Smoot testified, however, that Appellant stayed at the motel "somewhere around Christmas or before Christmas. It was like two or three months." But even assuming

14

*arguendo* that Smoot's testimony is conflicting, we defer to the jury's weight and credibility determinations because it is within the jury's sole province to assess credibility and resolve conflicts in testimony. *See Hall v. State*, No. 02-12-00346-CR, 2013 WL 5040257, at *1 (Tex. App.—Fort Worth Sept. 12, 2013, pet. ref'd) (mem. op., not designated for publication) (citing *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)); *Matson*, 819 S.W.2d at 846.

Deferring to the factfinder on issues of weight and credibility, we hold that the cumulative force of this evidence viewed in the light most favorable to the verdict is sufficient for a reasonable jury to conclude that on or about December 1, 2015, Appellant intentionally or knowingly failed to report to the FWPD his anticipated move date and new address at the Fort Worth motel not later than seven days before his intended change of address. *See Julian*, 492 S.W.3d at 466 (holding evidence that appellant consistently paid for space to lease his trailer showed appellant intended to change residence and was sufficient to support conviction for failing to register).

### D. The Evidence is Sufficient to Establish Appellant's Intent

Finally, to the extent Appellant contends there was no direct evidence of his intent to change residences, that is of no moment because his intent may be inferred from circumstantial evidence such as Appellant's acts, words, and conduct. *Guevara*, 152 S.W.3d at 50. Here, there was evidence from Carbajal that Appellant asked to stay with him because he did not have a place to live, that Appellant lived with Carbajal for approximately three-and-a-half weeks—for

15

about three weeks before and several days after the June 18, 2015 incident—and that Appellant had moved his clothes to Carbajal's residence. There was evidence from Officer Williams that on June 18, 2015, Appellant stated that he had lived with his uncle for seven days. There was also evidence from Smoot's testimony that Appellant lived at the Fort Worth motel for approximately two or three months, that Appellant rented a garage there, and that Appellant paid weekly $170 installments. Finally, there was evidence from Detective Landolt's testimony that the Hemphill house had a "For Sale" sign, a real-estate-listing-agent-style lock box, a padlock on the back gate, and an overgrown yard and that it appeared to be vacant.

We hold that this evidence of Appellant's acts and conduct taken together is sufficient for a reasonable jury to conclude that Appellant no longer resided at the Hemphill Address and intended to and did reside at the Arlington trailer park and Fort Worth motel, but failed to register in violation of chapter 62. We overrule Appellant's third issue.

## V. CONCLUSION

Having overruled Appellant's three issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, KERR, and PITTMAN, JJ.

16

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 24, 2018